## Myers' Adm'x v. Brown.

(Decided June 23, 1933.)

JOHN T. DIEDERICH for appellant.

VINSON & MILLER and ARTHUR T. BRYSON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Clancy Brown, a minor, while driving the automobile of his father, Rance Brown, collided with James H. Myers. As a result of this collision, Myers was killed. His administratrix brought suit against Rance Brown for the alleged negligent killing of her decedent by Clancy Brown; her suit being grounded on the family purpose doctrine. Rance Brown defended that action solely by a traverse of the alleged negligence of his son resulting in Myers' death and by a plea of contributory negligence on the part of Myers. He did not deny or put in issue his responsibility for his son's acts on the occasion in question under the family purpose doctrine. On the issues formed as indicated, the jury found a verdict for Rance Brown, and judgment was entered accordingly. Thereafter this suit was brought by Myers' administratrix to recover from Clancy Brown for his alleged negligent killing of Myers. Clancy Brown traversed the alleged negligence on his part, pleaded contributory negligence on the part of Myers, and then in another paragraph set out fully the issues which had been tried in the suit of Myers' administratrix against his father, and then pleaded the judgment in favor of his father on those issues as a bar to the instant suit. The administratrix demurred to this last plea. Her demurrer being overruled and she declining to plead further, her petiton was dismissed, and from that judgment this appeal is prosecuted.

The parties hereto are in accord on the proposition that the family purpose doctrine rests in this state on the principle of "master and servant" or that of "principal and agent." Stowe v. Morris, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224. The question then pre-

sented for decision is whether a judgment in favor of a master or principal in a suit brought for the alleged negligence of the servant or agent acting within the scope of his employment or agency inures to the benefit of that servant or agent when later sued by the same plaintiff for the same negligence.

It is the general rule that no person shall be affected by any judicial investigation to which he was not a party, unless his relation to some of the parties was such as to make him responsible for the final result of the litigation. Hence it is that, as a general rule, an adjudication takes effect only between those who are parties or privies to the judgment and that it gives no rights to or against third parties. Freeman on Judgments (5th Ed.) sec. 407. The rule thus stated is but a general one to which there are many exceptions, as pointed out by Freeman in section 409 of his work, supra. As Clancy Brown was not a party to the suit of Myers' administratrix against his father, the judgment in that suit cannot affect him favorably or adversely unless it be held that under facts as here presented Clancy Brown was in privity with his father or this case comes within one of the exceptions to the general rule supra. That they were not in privity is clear, since, as Freeman, in section 469 of his work points out:

"Agents and principals, including, of course, masters and servants, do not, as such, have any mutual or successive relationships to rights of property. They are not in privity with each other."

The question then on which the appeal is presented turns on whether the case comes within one of the exceptions to the general rule as to whom judgments affect. Speaking to the question when principals and agents and masters and servants are affected by judgments obtained by or against the other, Freeman, in section 469 of his work, says:

"Consequently the principal or master is not bound by the judgment obtained in an action by or against the agent or servant, and vice versa, unless he was a party or privy thereto by having authorized or actually and openly prosecuted or defended the action, or by having been notified and given an opportunity to defend under circumstances requiring him to do so, as in case of actions

against the agent for possession of his principal's property, or under other circumstances requiring one to indemnify the other, or unless one is claiming through or under the other so as to create a privity of estate, or the agent is acting within the scope of his authority in representing the principal.

"But where it is apparent that parties are mere agents and have acted both in the transaction in question and in the action under the authority and in the interest of their principal, they are privies to a judgment in another action involving the same issues and to which their principal was a party. And though it involves an apparent violation of the doctrine of mutuality of estoppel, the rule is general and well settled that where the liability, if any, of a principal or master to a third person is purely derivative and dependent entirely on the principle of respondeat superior, a judgment on the merits in favor of the agent or servant, or even a judgment against him, in so far as it fixes the maximum limit of liability, is res judicata in favor of the principal or master though he was not a party to the action. This rule is only an exemplification of the broader rule by which one whose liability is wholly derivative may claim the benefit of a judgment in favor of the person from whom his liability is derived, if not based on grounds applicable only to the latter. It has been applied to an officer's liability for the act of his deputy.

"So also the servant or agent whenever sued upon acts innocently done at the request of his master or principal, as in the case of a trespass, may claim the benefit of a previous judgment in favor of the latter on the same matter and based on grounds equally applicable to both. This rule may be justified as an exception to the doctrine of mutuality on the ground that where two persons are responsible for a wrongful act and their relation is such that one may look to the other for indemnity, a judgment in favor of the indemnitor is conclusive against the injured party in his action against the indemnitee. But when it is held, as it has been, that a judgment in favor of the principal in action against him for the fraud of his agent is res judicata in favor of the latter when sued for the

same fraud, the only possible basis for such a ruling is the broad ground that the principal and agent represent each other in all litigation based on the agent's acts whether tortious or otherwise. Such a position is obviously untenable and contrary not only to the principles already stated in this section but opposed to the rule that a judgment in favor of one joint tort-feasor, is not a bar to an action against another, at least when he has no right of indemnity, and also violates the principle of mutuality, since a judgment against the principal would not in such case bind the agent or servant.''

As to some of the principles thus enunciated by Freeman, it is doubtful whether they are in accord with the authorities in this state, as, for instance, the principle he enunciates to the effect that, where the liabilities, if any, of a principal or master to a third person are purely derivative and dependent entirely on the principal of respondeat superior, a judgment on the merits in favor of the agent or servant is res judicata in favor of the principal, for we have held that, in an action against both master and servant, where the master's liability depends solely on the principle of respondeat superior, the judgment can run in favor of the servant and against the master. Thus in J. I. Case Threshing Mach. Co. et al. v. Haynes, 178 Ky. 644, 199 S. W. 786, 787, it is written:

"It is earnestly insisted that the verdict should have been set aside by the trial court upon the ground that, as the jury acquitted Reeves, the agent of the machine company through whose negligence the accident happened, they could not find a verdict of guilty against the machine company. In other words, if he was not negligent, as the jury found, neither could the company have been negligent. There is much to be said in support of this contention, and perhaps the weight of authority in other jurisdictions supports it; but in I. C. Ry. Co. v. Murphy's Adm'r, 123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93, 11 L. R. A. (N. S.) 352, C. & O. Ry. Co. v. Booth, 149 Ky. 245, 148 S. W. 61, and in other cases, we have ruled that there may be a verdict of negligence and liability against the master, and a verdict of no negligence and no liability against the servant through whose negligence the

master becomes liable; and there is no room for distinction on this point between those cases and this.''

It would seem that the same result should follow though the servant and master were sued separately. But this position as thus taken in this state a fortiori authorizes the conclusion that we should follow the reasoning of Freeman to the effect that an agent is not entitled to rely as res judicata on a judgment in favor of his principal when he has no right to indemnity and where such a right would violate the principle of mutuality of estoppel by judgment. In this state, joint tort-feasors may be sued jointly or severally, and a judgment for or against one joint tort-feasor does not, as a general rule, preclude a suit and judgment against the other, at least in the absence of satisfaction of the first judgment secured against the joint tort-feasor first sued. By a parity of reasoning, the agent or servant in the instant case having no right of indemnity against the principal or master, a judgment in favor of the principal or master should not inure to his benefit, since clearly a judgment against his principal could not bind him. Some courts do hold that as a matter of public policy the plaintiff should have but one day in court, and, if he chooses not to sue both the agent and principal, or servant and master jointly, he must take his medicine if the judgment goes against him as to the one sued and he cannot thereafter sue the other. The public policy is the saving of expense, the time of the courts, and the possible scandal of divergent verdicts by different juries on the same evidence. But the rule as to joint tort-feasors seems, at least in this state, to fix a different rule of public policy, and it is difficult to understand why in the case of principal and agent or master and servant a rule of public policy differing from that of joint tort-feasors should be adopted.

From what has been said, it follows that the judgment in favor of Rance Brown was not res judicata in favor of Clancy Brown in the instant case, and the lower court erred in overruling the demurrer of Myers' administratrix to that plea.

The judgment is reversed, with directions to sustain that demurrer and for proceedings consistent with this opinion.

Whole court sitting.