**Evelyn MAYBRIER and Arthur Maybrier, Appellants,**

**v.**

**Royal Millett BALDWIN, Appellee.**

Court of Appeals of Kentucky.

June 27, 1969.

James G. Begley, Begley & Harkins, Danville, for appellants.

James F. Clay, Danville, for appellee.

PALMORE, Judge.

Appellants, Evelyn and Arthur Maybrier, husband and wife, brought this suit against appellee, Royal Millett Baldwin, for personal injuries and property damage sustained in a collision between the Maybrier and Baldwin automobiles. Baldwin counterclaimed for damage to his automobile. A verdict awarding the Maybriers $1800 was set aside as inadequate, and a retrial of all issues resulted in a verdict finding both drivers negligent. The Maybriers appeal, contending there was no evidentiary basis for an instruction permitting the jury to find negligence on the part of Mrs. Maybrier, driver of the Maybrier vehicle. Our conclusion is that they are right.

The accident happened on U. S. Highway 150, a two-lane blacktop road, a short distance east of Danville, Kentucky. It was in the daytime, and the weather was clear and the road dry. Mrs. Maybrier was proceeding eastward. Her destination was a public garage on the north side of the road, to her left. Immediately following her as she approached the garage was an automobile driven by Mrs. T. J. Hill, and behind Mrs. Hill was the Baldwin car. All three vehicles were proceeding at moderate speed, 35 m. p. h. or less. Mrs. Maybrier slowed down and turned on her left-turn signal light. She saw the Hill car through her rear-view mirror but did not see the Baldwin car. Mrs. Hill observed the signal and also slowed down to stop and await completion of the turn by Mrs. Maybrier. Mrs. Hill was aware of the Baldwin car's presence behind her, and she testified that she deliberately used her brake lights "to inform whoever was behind me that I possibly would be stopping." The left lane of the highway being clear of oncoming traffic, Mrs. Maybrier made her left turn and Baldwin undertook to pass the Hill and Maybrier vehicles, with the result that the right front portion of the Baldwin car struck the left rear wheel and fender of the Maybrier car.

Baldwin testified that (1) by reason of the intervening Hill automobile he could not and did not observe Mrs. Maybrier's turn signal, (2) Mrs. Hill's brake lights did not come on, (3) he did not recall having sounded his horn, (4) the left lane was clear when he started to pass, and (5) he was in the left lane when he first saw that Mrs. Maybrier's car was turning, at which time he applied his brakes and turned to the left, striking the Maybrier car just as he got off the blacktop.

Mrs. Maybrier testified that she was keeping a lookout through her rear-view and side-view mirrors and that Baldwin's car was not in the left lane when she began her turn. In fact, she never saw the Baldwin car until it was within 10 feet of her car, an instant or so before the collision.

Both she and Mrs. Hill testified that they did not hear any horn signal, and Mrs. Hill did not realize Baldwin was passing "until he was almost by my side * * * and I was surprised that he was passing us in this area."

The only way in which Mrs. Maybrier possibly could have been negligent was in turning at a time when she was or should have been aware of Baldwin's intention to pass. Since there was no evidence that he sounded his horn, the only manner in which she could or should have become aware of that intention was through observing the physical movement of his car into the left lane (or, perhaps, by observing his approach at such a rate of speed as to indicate a likelihood of passing, but there was no evidence of that situation in this case).

In reciting the facts of the case appellee's brief says, "While the appellee was in the act of passing the Hill car, the Maybrier car turned left across his path," etc. We fear this is something of an overstatement. Nowhere in the evidence was there any testimony by any witness, express or implied, that Baldwin turned *before* Mrs. Maybrier turned, or that he did so in time for her to observe his movement before undertaking her own. Examined and cross-examined on the very point, the most Baldwin would say is that he was in the left-hand lane *when he saw her turning*. Giving it the most favorable construction reasonably possible, the import of his testimony was that his turn and Mrs. Maybrier's turn were practically simultaneous. We cite, for example, the following passage (which was read to the jury) from his pretrial deposition: "I was driving at the speed they were driving and I turned out to go by at the same time Mrs. Maybrier turned to go into the Collins Rambler Service. When I saw that I slammed on my brakes and tried to stop * * *."

The highway being clear of oncoming traffic, unless there was something to put her on notice that the driver of an overtaking vehicle intended to pass Mrs. Maybrier certainly had the right, upon

giving the required turn signal, to make her turn. Cf. Collett v. Taylor, Ky., 383 S.W.2d 692, 696 (1964). We do not believe the physical circumstances of the accident alone would justify an inference that Baldwin had begun his passing movement, and had reached a position in the passing lane where Mrs. Maybrier should have seen him, before Mrs. Maybrier began her turn. Without other substantial evidence to that effect there was no basis for an instruction allowing the jury to find her negligent.

Two juries have found Baldwin negligent, and he does not appeal. The case should be submitted to another jury solely on the question of damages.

The judgment is reversed and the cause remanded for a new trial on the issue of damages.

All concur.